HINKLE, FINGLES, PRIOR & FISCHER, ATTORNEYS AT LAW
BY: Ira M. Fingles, Esq. (IF 5392)
2651 MAIN STREET, SUITE A
LAWRENCEVILLE, NEW JERSEY 08648
(609) 896-4200
Attorneys for Plaintiffs

18   3165

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| R.B.,<br>by and through her parents and<br>attorneys-in-fact,<br>v.<br><br>PERKIOMEN VALLEY<br>SCHOOL DISTRICT<br><br>Defendant. | CIVIL ACTION<br><br>**COMPLAINT** |

Plaintiffs K.A. and J.B., parents of R.B., an eligible exceptional student, all residing at 474 Reginald Lane, Collegeville, County of Montgomery, Pennsylvania 19426, by way of Complaint against Defendants Perkiomen Valley School District, with business offices located at 3 Iron Bridge Drive, Collegeville, County of Montgomery, Pennsylvania, 19426, say:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 because Plaintiffs' claims arise under the Constitution and laws of the United States, in particular, the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400 et seq., Section 504 of the Rehabilitation Act of 1973 ("Section 504"), as amended, 29 U.S.C. §794(a), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12132 et seq.; 20 U.S.C. § 1415(i)(2), which provides jurisdiction over IDEA complaints; 42 U.S.C. §1983; and 28 U.S.C. §§ 2201 and 2202, which authorize this Court to grant declaratory and injunctive relief.

2. Venue in this district is appropriate under 28 U.S.C. §1391(b) because all of the Defendants reside in the district and all of the events or omissions giving rise to Plaintiffs' claims occurred within the district.

3. The Plaintiffs have exhausted their administrative remedies with respect to the matters raised herein.

## PARTIES

4. Plaintiff R.B. is a now-22-year-old woman (date of birth: March 26, 1996) with disabilities who has been classified as Eligible for Special Education and Related Services pursuant to the IDEA. She is also eligible for the protections of Section 504 and the ADA. At all times relevant, R.B.'s legal

residence and domicile have been in her family home in Collegeville, Pennsylvania, within the geographical area served by the Defendant.

5. Plaintiffs K.A. and J.B. ("the Parents") are the natural parents of R.B.

6. Defendant Perkiomen Valley School District ("the District") is the legally constituted body corporate responsible for the conduct and supervision of schools in the geographical area in which Plaintiffs reside and is a local education agency obligated to observe the requirements of the IDEA pursuant to 20 U.S.C. §1401(15). The District receives federal financial assistance and is a public entity as defined in Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131(1).

## FACTUAL BACKGROUND

7. Plaintiffs repeat each and every paragraph above as if set forth at length herein.

8. R.B. has been diagnosed with Oral Facial Digital Syndrome I, Intellectual Disabilities, and cleft palate. As a result of these conditions, R.B. exhibits delays in multiple areas of functioning, including, inter alia, cognition, communication, socialization, and adaptive functioning.

9. Notwithstanding the foregoing, R.B. has potential to make educational progress at an impressive rate if provided with the appropriate specialized

and intensive services she requires. As such, if provided such services, she can be expected to experience significant degrees of productivity and independence in the future.

10. During the Summer of 2015, a dispute arose between the parties as to R.B.'s appropriate educational program and placement for the 2015/2016 school year. The District offered R.B. the equivalent of a continuation of her education in its local high school in a program with a heavy emphasis on classroom instruction, notwithstanding that R.B. had already completed twelfth grade and was nineteen years old at the time.

11. The parents' position was that in order to receive a free appropriate public education, R.B. required placement in the Vocational Independence Program ("VIP") located in Islip, New York. The VIP program is an independent entity operated under the auspices of the New York Institute of Technology ("NYIT"), but it is not a postsecondary education program. Nonetheless, the District denied R.B. placement in the VIP program on the sole, and incorrect, basis that it was a postsecondary program.

12. The educational program and placement offered by to R.B. by the District for the 2015/2016 school year were inappropriate in light of her circumstances and were not reasonably calculated to confer significant and meaningful educational benefit upon R.B.

13. The VIP program is a residential transitional program for students with intellectual disabilities located Islip, New York. It provides intensive and specialized special education, related services, and supplementary aides and services geared towards students' development of the skills that will be needed to succeed after graduation in employment and independent living. At all times relevant, the VIP program has been an appropriate and proper placement for R.B.

14. Prior to the commencement of the 2015/2016 school year, R.B.'s parents requested that the District agree to place R.B. into the VIP program for the 2015/2016 school year. The District wrongfully denied this request.

15. Consequently, R.B.'s parents placed R.B. into the VIP program at their own expense for the 2015/2016 school year. They did so on adequate and legally sufficient notice to the District and reserved all rights to seek reimbursement for the costs that they incurred in educating R.B.

16. R.B. performed exceptionally well in the VIP program during the 2015/2016 school year.

17. For the 2016/2017 school year, the District offered R.B. an alternative placement in a program known as Technical College High School-Pickering ("Pickering"). Among other failings, the Pickering program was mainly provided in a classroom/lecture format with limited opportunities for hands-

on training. Additionally, the program offered activities which were not designed with R.B.'s individual needs in mind and many of the activities would have proven too difficult for her. There was no instruction related to independent living skills, nor was there any instruction provided that would have allowed R.B. to learn how to live and function independently within her community.

18. The educational program and placement offered by to R.B. by the District for the 2016/2017 school year were inappropriate in light of her circumstances and were not reasonably calculated to confer significant and meaningful educational benefit upon R.B.

19. Prior to the commencement of the 2016/2017 school year, R.B.'s parents requested that the District agree to place R.B. into the VIP program for the 2016/2017 school year. The District wrongfully denied this request.After efforts to amicably resolve the parties' disputes regarding the 2015/2016 and 2016/2017 school years failed, the parents requested that the Pennsylvania Department of Education provide a special education "due process" hearing on or about June 9, 2017. The relief that they sought was a declaration that the District had denied R.B. a free appropriate public education for the 2015/2016 and 2016/2017 school years. The parents further sought reimbursement from the District of the costs of R.B.'s attendance at the

NYIT-VIP Program, including, <u>inter alia</u>, tuition, residential costs, and transportation to and from the VIP program.

20. Three hearing dates were held in the matter on December 15, 2017, January 26, 2018, and January 29, 2018. A final decision was issued by the Hearing Officer presiding over the case on April 21, 2018.

21. The final decision of the Hearing Officer concluded the District had failed to offer an appropriate education program for R.B. during both the 2015/2016 and 2016/2017 school years.

22. The Hearing Officer based her decision that the District had denied R.B. a free appropriate public education for the regarding the 2015/2016 school year in part upon her conclusions that the transition portion of the IEP offered by the District for the 2015/2016 school year was not individualized, nor was it "results-oriented" or "focused on improving achievement and movement to post school activities." Instead, found the Hearing Officer, it was an attempt to place R.B. in an existing and available program inconsistent with her needs, strengths and abilities.

23. For 2016/2017, an IEP was developed in July 2016 and subsequently revisited in December 2016. These two proposed IEPs were not markedly different from each other and shared the same deficiencies in terms of appropriateness of the program they were offering. The Hearing Officer

concluded in part that much like the proposed IEP for 2015/2016, the 2016/2017 IEP failed to address individualized, outcome-oriented post-secondary transition planning, and that the the proposed District program for R.B. for the 2016/2017 did not offer her a free appropriate public education..

24. The VIP Program at NYIT provided R.B. with courses and experiences focused on her unique needs, including but not limited to teaching her communication, daily living skills, and executive functioning skills, as well as skills related to travel, finances, employment, and nutrition. She achieved high grades in all of her classes, and by any metric, was very successful at VIP.

25. In her decision, the Hearing Officer found that the VIP Program was appropriate for R.B. As such, she ordered that the District reimburse the parents for the costs that they incurred with respect to R.B.'s placement in the VIP program for the 2015/2016 and 2016/2017 school years. However, she did not order that the District reimburse the full amount expended by the parents with respect to R.B.'s placement in the VIP program during those school years.

26. The Hearing Officer denied reimbursement for residential costs for the VIP Placement for both school years. She concluded the equitable considerations dictated a reduction in the award of tuition reimbursement to omit the

charges for the residential portion of the tuition and costs as well as transportation expenses.

27. The Hearing Officer also reduced reimbursement for remaining costs for 2016/2017 by 50% based on alleged inequitable factors.

28. Both of these reductions are erroneous, as the parents did not engage in any inequitable conduct at any time, nor was there any allegation of or evidence of any harm or prejudice to the District as a result of any actions or omissions on the part of the parents.

## COUNT I

29. The parents repeat each and every paragraph above as if set forth at length herein.

30. The parents agree with or do not contest the final decision issued by the Hearing Officer in all respects except that they believe that the Hearing Officer's decision to reduce the award of tuition reimbursement to the parents for the costs of the VIP program for the 2016/2017 school year based upon alleged equitable factors was erroneous and contrary to the weight of the evidence adduced during the administrative hearing.

31. By virtue of the foregoing, the Hearing Officer's Final Decision and Order related to the reduction of the amount of tuition reimbursement awarded to

the parents by 50% for the 2016/2017 school year violated the IDEA, Section 504, the ADA, and related state and federal law.

## COUNT II

32. Plaintiffs repeat each and every paragraph above as if set forth at length herein.

33. By her own measure, the Hearing Officer concluded that she had granted "a majority of the Parents' claims[.]"

34. As a result of the Hearing Officer's favorable decision, Plaintiffs are prevailing parties and as such are entitled to reimbursement of the attorneys' fees and costs of litigation that they incurred in this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Honorable Court enter Judgment:

I. Reversing that portion of the Hearing Officer's final decision which reduced the amount of tuition reimbursement awarded to the parents for the 2016/2017 school year by 50%; Directing Defendant to provide R.B. with compensatory education to remedy its failure to provide R.B. with the proper level and type of after-school services he required dating from September, 2008 through the date of implementation of any relief ordered by this Court;

II. Declaring that the Plaintiffs are prevailing parties in their dispute with the Defendant and awarding the Plaintiffs their attorneys' fees and costs of litigation expended in connection with this matter; and

III. Awarding such other relief as is equitable and just.

                                  Respectfully submitted,

                                  HINKLE & FINGLES, ATTORNEYS AT LAW
                                  Attorneys for Plaintiffs

Dated: July 19, 2018    By:    _____
                                  /s/ Ira M. Fingles, Esq. (IF 5392)